SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

-----------------------------------------------------------------------X

| | | |
|---|---|---|
| KAREN BACKUS, individually and as a shareholder in U3 ADVISORS, INC., | : | Index No. |
| | : | Date Purchased: 10/___/2016 |
| -against- | : | |
| | : | **SUMMONS** |
| Plaintiff, | : | |
| | : | Plaintiff designates New York County as the place of trial |
| U3 ADVISORS, INC., OMAR BLAIK, THOMAS LUSSENHOP and U3 VENTURES, LLC, | : | |
| | : | The basis of venue is location Plaintiff's place of residence is New York, New York |
| Defendants. | : | |

-----------------------------------------------------------------------X

**YOU ARE HEREBY SUMMONED** to answer the Complaint in this action and to serve a copy of your answer or, if the Complaint is not served with this Summons, to serve a Notice of Appearance on the plaintiff's attorneys within twenty (20) days after service of this Summons, exclusive of the date of service (or within thirty (30) days after service is complete if the Summons is not personally delivered to you within the State of New York); and in the case of your failure to appear or answer, judgment will be taken against you by default for the relief demanded in the Complaint.

DATED: New York, New York
October 18, 2016

                                          WASSERMAN GRUBIN & ROGERS, LLP

                                          By: _____
                                                Michael T. Rogers
                              1700 Broadway, 42nd Floor
                              New York, NY  10019
                              (212) 581-3320
                              *Attorneys for Plaintiff*
                              *Karen Backus, individually and as a shareholder in U3 Advisors, Inc.*

TO:    U3 ADVISORS, INC.
           1735 Market Street, Suite A-443
           Philadelphia, PA 19103

OMAR BLAIK
526 S. 46th Street
Philadelphia, PA 19102

THOMAS LUSSENHOP
4200 Pine Street, #108
Philadelphia, PA

U3 VENTURERS, LLC
30 S. 15th Street, 15th Floor
Philadelphia, PA 19102

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF THE NEW YORK
------------------------------------------------------------------X
KAREN BACKUS, individually and as a shareholder in
U3 ADVISORS, INC.,

                Index No.        /2016

                Plaintiff,

    -against-

                **VERIFIED COMPLAINT**

U3 ADVISORS, INC., OMAR BLAIK,
THOMAS LUSSENHOP and
U3 VENTURES, LLC,

                Defendants.
------------------------------------------------------------------X

       Plaintiff Karen Backus, individually and as a shareholder of U3 Advisors, Inc., by and through her attorneys Wasserman Grubin & Rogers, LLP, as and for her complaint against defendants, respectfully alleges as follows:

## INTRODUCTION

      1.     This action arises from damages suffered by plaintiff Karen Backus as a result of defendant U3 Advisors, Inc.'s breaches and failure to comply with its obligations under a certain stockholder agreement and the wrongful diversion by defendant Omar Blaik of U3 Advisors' resources, including the unauthorized use of U3 Advisors' personnel for a separate unrelated business entity.

## THE PARTIES

      2.     Plaintiff Karen Backus (hereinafter "Backus") is a resident of the State of New York, residing at 74 West 68th Street, New York, New York. Backus is a principal, co-founder and former Chief Executive Officer ("CEO") of U3 Advisors, Inc. (hereinafter "U3 Advisors"), holding forty percent (40%) of the issued and outstanding shares of U3 Advisors.

3.     Defendant U3 Advisors is a foreign corporation organized and existing under and by virtue of the laws of the State of Delaware with offices located at 230 West 41st Street, New York, New York and 1735 Market Street, Suite A-443, Philadelphia, Pennsylvania 19103. U3 Advisors provides consulting and project management services to universities and nonprofit organizations.

4.     Upon information and belief, defendant Omar Blaik (hereinafter "Blaik") is a resident of the State of Pennsylvania, residing at 526 S. 46th Street, Philadelphia, Pennsylvania. Blaik is the Chief Executive Officer ("CEO") and co-founder of U3 Advisors, holding sixty-percent of the issued and outstanding shares of U3 Advisors.

5.     Upon information and belief, defendant Thomas Lussenhop (hereinafter "Lussenhop") is a resident of the State of Pennsylvania, residing at 4200 Pine Street, #108, Philadelphia, Pennsylvania. At all times mentioned herein, Lussenhop was a Senior Vice President, holding twelve percent of the issued and outstanding shares of U3 Advisors.

6.     Upon information and belief, defendant U3 Ventures, LLC ("U3 Ventures") is a foreign corporation organized and existing under and by virtue of the laws of the State of Delaware. U3 Ventures is a real estate investment fund and developer owned by Blaik and Lussenhop.

## FACTUAL BACKGROUND

7.     In or about January, 1998, Backus formed Karen Backus Real Estate which later became K. Backus & Associates ("KBA") which successfully provided advisory and project management services to universities and nonprofit institutions. Backus was the one hundred percent owner of KBA.

2

8. In 2012, after working over 16+ years as an advisor to some of the more prominent universities and nonprofit organizations throughout the United States, Backus decided to explore plans for her gradual retirement in the coming years and sought to transition her ownership interest in KBA to a successor entity or other interested party.

9. In late 2012 and continuing through 2013, Backus and Blaik met to discuss the acquisition of KBA and/or the merging of their respective operations, finances, clients and employees to form a new company that would provide real estate and project management advisory services to universities, foundations and nonprofit organizations.

10. To induce Backus to join the new company, Blaik and Lussenhop represented to Backus and agreed that if Backus joined and combined her KBA operations and revenues, and brought her employees and clientele, she would receive a 42% interest in the proposed new company. Blaik received 48% and Lussenhop 10% of the shares. Backus agreed to sell two of her shares to Lussenhop at the Agreed Upon Share Value (as hereinafter defined) as of January 1, 2014, reducing her interest to 40% and increasing his interest to 12%.

11. Backus advised Blaik and Lussenhop that one of her conditions for joining them in the new company was that a portion of her shares had to be purchased each year by the new company so as to allow her to be able to retire, if she chose, in four years.

12. Blaik and Lussenhop agreed that the proposed new company would purchase 5% of her shares per year for each of the first four years, providing for the transfer of 20% of Backus' 40% interest.

13. Indeed, Blaik and Lussenhop acknowledged that the annual purchase of the Backus' shares during the first four years was a critical condition to Backus' decision to join

3

them and that she would not have joined the new company if they had not agreed to this condition.

14. On or about January 1, 2014, Backus, Blaik and Lussenhop combined the respective resources from their companies and formed a new company called U3 Advisors.

15. The respective ownership interests of Backus, Blaik and Lussenhop in U3 Advisors were memorialized in the Stockholder Agreement of U3 Advisors, Inc. dated January 1, 2014 (see Exhibit No. 1—the "Stockholder Agreement" attached hereto).

### Backus', Blaik's and Lussenhop's Ownership Interests

16. At all times mentioned herein, Backus holds a 40% interest, which represents 40 outstanding shares of U3 Advisors' stock.

17. Upon information and belief, at all times mentioned herein, Blaik holds a 60% interest which represents 60 outstanding shares of U3 Advisors' stock.

18. Upon information and belief, at all times mentioned herein, Lussenhop holds a 12% interest which represents 12 outstanding shares of U3 Advisors' stock.

### Agreed Per Share Value of U3 Advisors' Stock

19. Pursuant to the Stockholder Agreement, the "Agreed Company Value" was defined as being the amount equal to the gross revenues of U3 Advisors for the fiscal year, net of reimbursed income, bad debts and sales discounts during the fiscal year. In fact, this methodology was unanimously agreed to by Blaik, Backus and Lussenhop.

20. The Stockholder Agreement also defined the "Agreed Share Value" to be equal to the Agreed Company Value divided by the number of outstanding shares of U3 Advisors. Since there were only 100 outstanding shares that U3 Advisors issued, the value of each share is equal

4

to one percent (1%) of the gross revenues of U3 Advisors for the fiscal year less reimbursed income, bad debts and sales discount.

21. Pursuant Article 5(c) of the Stockholder Agreement, which is entitled "Major Business Decisions," at subparagraph (i), "unanimous board approval" is required for "altering the methodology for computing Agreed Company Value."

22. At no time since the entering into the Stockholder Agreement up to the present has there ever been unanimous board approval to alter the Agreed Company Value and/or the Agree Share Value.

### Agreement to Purchase Backus' Shares

23. As Backus had required as a condition to joining U3 Advisors, the Stockholder Agreement also memorialized the agreement that Backus would sell and U3 Advisors would purchase 5% of her outstanding shares each year for the calendar years 2014 through 2018. The shares were to be purchased at the "Agreed Share Value" set forth in the Stockholder Agreement (*i.e.*, each share valued at one percent (1%) of the fiscal year's gross revenues of U3 Advisors less reimbursed income, bad debts and sales discount).

24. As Backus had advised Blaik and Lussenhop, the Stockholder Agreement also memorialized in Article 6(c) that:

> "The Company and the Stockholders acknowledge that Karen may retire at any time after the 4th anniversary of the Effective Date (January 1, 2014)."

25. During the calendar years of 2014 and 2015, the U3 Advisors gross revenues less reimbursed income, bad debts and sales discount, exceeded $4,000,000 for each year. Based on the foregoing, the Agreed Share Value for each share of stock held by Backus was established to be $40,000 for 2014 and $50,000 for 2015.

5

26. In fact, in a November 2015 email, Blaik acknowledged: "Karen, over the next few years sells 20 shares in total and receives $1,000,000."

27. Despite the repeated requests and demands by Backus for U3 Advisors to honor its obligations to purchase her shares under the Stockholder Agreement, U3 Advisors, Blaik and Lussenhop have denied all requests and refused to carry out the required annual purchase of Backus shares for the calendar years 2014 through 2016.

28. Moreover, after Backus committed the resources of and ceased the consulting services being performed by KBA—the company she devoted nearly two decades to build—so as to form U3 Advisors with Blaik and Lussenhop and despite the express terms of their mutually agreed upon Stockholder Agreement, both Blaik and U3 Advisors have attempted to force Backus to now accept less than the Agreed Share Value formula set in 2014.

29. In fact, in January 2016, Blaik, Lussenhop and U3 Advisors attempted to amend the Stockholder Agreement for the sole purpose to change the methodology for calculating Agreed Share Value so as to now depress the value of the Backus shares to less than 30% of the value as calculated in the methodology agreed upon by all Parties in 2014.

30. As a result of the refusal by Blaik, Lussenhop and U3 Advisors to honor its obligations to purchase 5% (*i.e.* 5 shares) of the outstanding stock held by Backus during the calendar years of 2014, 2015 and 2016, U3 Advisors has breached its obligations under the Stockholder Agreement and refused to honor its commitment to purchase the Backus shares.

31. Blaik and U3 Advisors have also recently engaged in a course of conduct to refrain from distributing to or providing any financial information of U3 Advisors to Backus.

32. Blaik, Lussenhop and U3 Advisors have also created a difficult, if not hostile, environment designed to drive her from U3 Advisors.

6

### Diversion and Depletion of U3 Advisors' Resources

33. Article 6(a) of the Stockholder Agreement provides:

"The Stockholders hereby acknowledge that for at least two years following the Effective Date (January 1, 2014, all of the Principals are expected to be 'Active Principals', meaning that each of them is expected to devote substantially all of their professional time to the Company, and to be involved in the day-to-day business operations and management of the Company."

34. Backus has discovered that during the calendar years of 2014 through 2016, Blaik and Lussenhop diverted resources, including the allocation of U3 Advisors' staff to perform unauthorized work on behalf of U3 Ventures.

35. In fact, during the calendar years of 2014, 2015 and 2016, 15 U3 Advisors' salaried employees worked over 2200 work hours on matters for U3 Ventures. In fact, Lussenhop, who now works primarily for U3 Ventures, devoted approximately 24% of his time to U3 Ventures during 2014 and 2015. The full value of the U3 Advisors employee hours diverted to U3 Ventures tasks is believed to exceed $800,000.

36. Unlike Backus, who completely devoted her time and resources to U3 Advisors, Blaik continued to own and operate his company U3 Ventures and, upon information and belief, remained the 100% owner until August 2016, when Lussenhop received shares of U3 Ventures and became an employee of Blaik's U3 Ventures.

37. During the same years, Backus devoted her full attention and efforts to U3 Advisors and successfully generated revenues of $1,845,594 in 2014 and $2,021,747 for 2015 and is on pace to exceed $2 million for 2016.

38. Today, upon information and belief, Backus and Blaik are the sole shareholders of U3 Advisors, and Blaik and Lussenhop are the sole shareholders of U3 Ventures. Blaik, as the

7

CEO of U3 Advisors, has diverted the labor resources of U3 Advisors to promote and work on behalf of his own company, U3 Ventures.

## AS AND FOR A FIRST CAUSE OF ACTION
## AGAINST U3 ADVISORS
## BREACH OF STOCKHOLDER AGREEMENT

39. Plaintiff repeats, reiterates and realleges each and every allegation contained in Paragraphs No. "1" through No. "38" hereof, with the same force and effect as though more fully set forth at length herein.

40. At all times mentioned, Backus was a shareholder in and a principal officer of U3 Advisors.

41. Pursuant to the Stockholder Agreement, including but not limited to Article 3(b), commencing in 2014 and continuing for each of the successive four calendar years, U3 Advisors was required to purchase at the Agreed Share Value five (5) shares each year of the stock held by Backus.

42. The Agreed Share Value of the U3 Advisors shares was $40,000 in 2014, $50,000 in 2015 and will be not less than $50,000 for 2016.

43. Despite repeated demands by Backus, U3 Advisors has failed and refused to honor its obligation to purchase the required shares from Backus during the 2014, 2015 and 2016 calendar years.

44. As a result of U3 Advisors' breach of the Stockholder Agreement, Backus has sustained and will continue to sustain damages as a direct result of U3 Advisors' refusal to honor its obligation to purchase Backus' shares of U3 Advisors' stock.

45. Although the damages incurred thus far are not fully liquidated, it is believed such damages will exceed the sum of $500,000.

8

46. By reason of the foregoing, Backus is entitled to have judgment against U3 Advisors in an amount to be determined at trial, but presently estimated to exceed $500,000, together with interest, costs and disbursements of this action.

## AS AND FOR A SECOND CAUSE OF ACTION
## AGAINST BLAIK AND LUSSENHOP
## DIVERSION AND WASTE OF U3 ADVISORS' ASSETS

47. Plaintiff repeats, reiterates and realleges each and every allegation contained in Paragraphs No. "1" through No. "46" hereof, with the same force and effect as though more fully set forth at length herein.

48. At all times mentioned herein, Backus is a principal and 40% owner of U3 Advisors

49. Blaik is a principal and CEO with a 60% ownership interest in U3 Advisors.

50. Lussenhop was a Senior Vice President with a 12% ownership interest in U3 Advisors.

51. In their respective capacities as CEO and Senior Vice President, Blaik and Lussenhop improperly diverted the resources of U3 Advisors by directing its employees to perform work and services for U3 Ventures from 2014 to 2016.

52. Blaik's and Lussenhop's actions in diverting U3 Advisors' employees to perform work on behalf of U3 Advisors was not authorized at any time by the Board of Directors of U3 Advisors and caused the improper depletion and waste of U3 Advisors' resources.

53. Blaik's and Lussenhop's actions were solely for the purpose of benefiting their respective interests in U3 Ventures, without regard to the consequences or detriment of U3 Advisors.

9

54. As a result of the foregoing, Backus and any other shareholders of U3 Advisors have sustained and will continue to sustain damages as a direct result of Blaik's and Lussenhop's diversion and depletion of U3 Advisors' employees and other resources and assets for the benefit of U3 Ventures.

55. Although the damages incurred thus far are not fully liquidated, it is believed such damages will exceed the sum of $800,000.

56. By reason of the foregoing, Backus and any other shareholders are entitled to have judgment against Blaik and Lussenhop in an amount to be determined at trial, but presently estimated to exceed $800,000, together with interest, costs and disbursements of this action.

## AS AND FOR A THIRD CAUSE OF ACTION
## AGAINST BLAIK, LUSSENHOP AND U3 VENTURES
## FOR CONVERSION

57. Plaintiff repeats, reiterates and realleges each and every allegation contained in Paragraphs No. "1" through No. "56" hereof, with the same force and effect as though more fully set forth at length herein.

58. As stated above, from 2014 through 2016 Blaik and Lussenhop wrongfully diverted U3 Advisors' resources by directing its employees to work on matters for the benefit of his own unrelated company, U3 Ventures.

59. By Blaik's and Lussenhop's diverting U3 Advisors' employees to work on behalf of Blaik at his company U3 Ventures, Blaik, Lussenhop and U3 Ventures improperly converted and retained the resources and assets of U3 Advisors.

60. Although the damages incurred thus far are not fully liquidated, it is believed such damages will exceed the sum of $800,000.

10

61. As a result of Blaik's, Lussenhop's and U3 Ventures' wrongful use and conversion of U3 Advisors' resources, Backus and the shareholders of U3 Advisors have been damaged in an amount to be determined at trial but believed to exceed $800,000.

62. By reason of the foregoing, Backus and any other shareholders are entitled to have judgment against Blaik in an amount to be determined at trial, but presently estimated to exceed $800,000, together with interest, costs and disbursements of this action.

### AS AND FOR A FOURTH CAUSE OF ACTION AGAINST BLAIK AND U3 ADVISORS FOR FRAUD IN THE INDUCEMENT

63. Plaintiff repeats, reiterates and realleges each and every allegation contained in Paragraphs No. "1" through No. "62" hereof, with the same force and effect as though more fully set forth at length herein.

64. As stated above, in October 2013, Blaik uttered factual misrepresentations to Backus, promising that if Backus joined him in the formation of a new company and contributed the resources of KBA, the new company would purchase a portion of Backus' shares of stock in the new company for the agreed share value during the 2014 through 2018 calendar years and permit Backus to plan for, if and when she decided, her eventual retirement from the new company which became U3 Advisors.

65. Blaik knew that Backus would not have contributed the resources of KBA and formed U3 Advisors with him if she knew that U3 Advisors would not purchase a certain number of her shares each year as promised.

66. Blaik's promises and statements ensuring Backus that her shares would be timely purchased were false when made, and Blaik knew they were false when he made them.

11

67. Blaik made the promises and statements with the intent to deceive Backus and to induce her to form U3 Advisors, and contribute the resources of KBA. As a result thereof, Backus relied on Blaik's promises and statements and was induced to, and did, in fact, join Blaik in the formation of U3 Advisors, contributed the resources of KBA and closed KBA's consulting practice to devote her time and energies to U3 Advisors.

68. Backus believed that the promises and statements made by Blaik were true and relied on them to her detriment as she closed KBA, her company then of 16 years, and committed its resources to Blaik and U3 Advisors.

69. As a result of Blaik's false representations and fraudulent inducement, Backus have been damaged in an amount to be determined at trial but believed to exceed $500,000.

70. By reason of the foregoing, Backus is entitled to have judgment against Blaik and U3 Advisors in an amount to be determined at trial, but presently estimated to exceed $500,000, together with interest, costs and disbursements of this action.

### AS AND FOR A FIFTH CAUSE OF ACTION AGAINST BLAIK FOR BREACH OF FIDUCIARY DUTY

71. Plaintiff repeats, reiterates and realleges each and every allegation contained in Paragraphs No. "1" through No. "70" hereof, with the same force and effect as though more fully set forth at length herein.

72. As the CEO and a principal of U3 Advisors, Blaik owed a fiduciary duty to Backus as a shareholder to act with the utmost good faith, honesty and loyalty toward U3 Advisors and Backus and not to favor or promote their own self-interests over U3 Advisors.

73. In his capacity as CEO, Blaik improperly diverted the resources of U3 Advisors by directing its employees to perform work and services for U3 Ventures from 2014 to 2016.

12

74. Blaik's actions were solely for the purpose of benefiting his interests and the interests of his company U3 Ventures without regard for the consequences or detriment of U3 Advisors.

75. Blaik's actions constitute a breach of his fiduciary duty owed to U3 Advisors and Backus.

76. As a result of the foregoing, Backus and any other shareholders of U3 Advisors have sustained and will continue to sustain damages as a direct result of Blaik's breach of his fiduciary duty owned to U3 Advisors and Backus.

77. Although the damages incurred thus far are not fully liquidated, it is believed such damages will exceed the sum of $800,000.

78. By reason of the foregoing, Backus and any other shareholders are entitled to have judgment against Blaik in an amount to be determined at trial, but presently estimated to exceed $800,000, together with interest, costs and disbursements of this action.

## AS AND FOR A SIXTH CAUSE OF ACTION
## FOR DECLARATORY JUDGMENT

79. Plaintiff repeats, reiterates and realleges each and every allegation contained in Paragraphs No. "1" through No. "78" hereof, with the same force and effect as though more fully set forth at length herein.

80. There exists a real and actual controversy between the parties herein concerning the obligations of U3 Advisors to purchase from Backus certain shares of her stock during the 2014 through 2018 calendar years.

81. Pursuant to the Stockholder Agreement, U3 Advisors was required and continues to be required to purchase 5 shares of Backus' 40 shares of stock each year at the Agreed Share

13

Value for four consecutive years beginning in 2014.  U3 Advisors has refused and denies that it has any obligation to purchase the Backus shares.

82.  This claim is therefore ripe for determination.

83.  Backus respectfully seeks a declaratory judgment; (1) for the purpose of determining and adjudicating question of actual controversy between the parties, and (2) declaring that pursuant to the terms of the Stockholder Agreement, that U3 Advisors is obligated to purchase the Backus shares of stock as set forth above.

**WHEREFORE**, plaintiff hereby demands judgment as follows:

(A)  On the First Cause of Action, a judgment against defendant U3 Advisors, Inc. for Breach of Stockholder Agreement in an amount to be determined at the trial of this action, but which is believed to exceed $500,000, plus interest thereon;

(B)  On the Second Cause of Action, a judgment against defendant Omar Blaik and Thomas Lussenhop for diversion of resources and waste of corporate assets in an amount to be determined at the trial of this action, but which is believed to exceed $800,000, plus interest thereon;

(C)  On the Third Cause of Action, a judgment against defendants U3 Advisors, Inc. and Omar Blaik, Thomas Lussenhop and U3 Ventures for conversion in an amount to be determined at the trial of this action, but which is believed to exceed $800,000, plus interest thereon;

(D)  On the Fourth Cause of Action, a judgment against defendants U3 Advisors, Inc. and Omar Blaik for fraud in the inducement in an amount to be determined at the trial of this action, but which is believed to exceed $500,000, plus interest thereon;

14

(E)     On the Fifth Cause of Action, a judgment against defendant Omar Blaik for breach of fiduciary duty in an amount to be determined at the trial of this action, but which is believed to exceed $800,000, plus interest thereon;

(F)     On the Sixth Cause of Action, an Order declaring that U3 Advisors, Inc. is obligated to purchase 20 shares of Karen Backus' shares of stock in U3 Advisors;

(G)     For the costs, disbursements and attorneys' fees of this action; and

(H)     For such other, further and different relief as this Court may deem just and proper.

Dated: New York, New York
       October 18, 2016

                                      WASSERMAN GRUBIN & ROGERS, LLP

                                      By:_____
                                            Michael T. Rogers
                                  *Attorneys for Plaintiff*
                                  *Karen Backus, individually and as a shareholder in*
                                  *U3 Advisors, Inc.*
                                  1700 Broadway, 42nd Floor
                                  New York, New York 10019
                                  (212) 581-3320

## VERIFICATION

STATE OF NEW YORK )
) ss.:
COUNTY OF NEW YORK )

KAREN BACKUS, being duly sworn, deposes and says:

I am the individual plaintiff in this action and a shareholder and officer of U3 Advisors. I have read the foregoing Verified Complaint and the same is true to my own knowledge, except as to matters stated on information and belief, and as to those matters, I believe them to be true.

Karen Backus

Sworn to before me this
18th day of October 2016

Notary Public

OKEY ARIZOR
Notary Public, State of New York
No. 01AR6189659
Qualified in Bronx County
Commission Expires June 30, 20__

16